## FLORIDA GRAVEL CO. v. TAMPA SAND & SHELL CO. et al.

### No. 5939.

Circuit Court of Appeals, Fifth Circuit.

April 24, 1931.

Hugh M. Taylor, of Quincy, Fla., W. J. Oven, of Tallahassee, Fla., and Y. L. Watson, of Quincy, Fla., for appellant.

R. W. Shackleford and Morris E. White, both of Tampa, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellee filed a libel in personam against appellant to recover for the loss of a barge alleged to have been caused by the negligence of appellant. A decree was entered in favor of appellee in the sum of $3,500. This appeal followed.

There was evidence tending to show the following state of facts: Both appellant and appellee were engaged in dredging sand and gravel in the Apalachicola and Chattahoochee rivers. Appellee was the owner of a barge known as No. 10. It was 90 feet long by 24 feet beam and 6 feet in depth. It was constructed of heavy timbers, with a rake at one end of about 12 feet forming the bow and with two bulkheads running lengthwise through the hull. A cargo bin was constructed on deck. Appellee had loaded the barge with sand and gravel, but it was tied up to the bank, as there was no place at which to unload. Appellant had entered into a contract with one F. M. Hendry by which he agreed to furnish barges and tugs for transporting appellant's sand and gravel. On March 3, appellant received a telegram from Hendry, who was then at Tampa, advising, "Have arranged use three Thomas barges now in river." Thomas was president of appellee and one of the barges referred to was No. 10. As a matter of fact, Hendry had not succeeded in making satisfactory arrangements for the use of the barges, although he had had some negotiations looking thereto. On receipt of the telegram, Lipscomb, who was vice president and manager of appellant, sent one of his men, Fisher, to take charge of barge No. 10. The gravel and sand then on board were unloaded. It was subsequently billed to the Florida Gravel Company, appellant, and was paid for. Appellant then proceeded to use the barge for its own purposes. On March 28, 1928, in loading her from a dredge she was hauled up at the stern of the dredge with the rake overhanging the after part of the dredge and she was loaded by a chute of the dredge. The capacity of the barge was about 210 tons of material when properly loaded. About 100 to 110 tons were loaded on her but nearly all towards her after end, very little amid-

ships, and none at all at the bow. This caused her after end to sink so low in the water that she began to leak and filled up. It was then endeavored to swing her around so that the loading might be more evenly distributed, but she made water rapidly and turned over, drifting down the river. She was later towed to a mud flat and several unsuccessful efforts were made to right her. Eventually she became a total loss. She was built in 1922 by appellee, and there was testimony tending to show that her cost was about $8,000. There was also testimony tending to show that she was in good condition when lost.

It is certain that the barge was appropriated by appellant either for its own use or acting as the agent for Hendry and without the consent of her owners. It is also reasonably certain that appellee had knowledge that she was being used and made no protest. However, it is not necessary to determine whether there was a conversion of the property, as there was ample evidence to show that the barge was lost through negligence in loading, for which appellant was solely responsible. The District Court heard all the testimony in open court and no doubt reached the correct conclusion as to the liability of appellant and the value of the barge.

The record presents no reversible error. Affirmed.